### 45603.  FORD MOTOR COMPANY v. GUNN et al.

WHITMAN, Judge. Dudley Gunn's complaint against Ford Motor Co. and Midville Motor Co., Inc., alleged in substance that he had purchased a new 1967 Ford station wagon automobile with a "new vehicle warranty," upon which he had relied, but that the warranty had been breached and he had been damaged. A trial was had with the jury finding in favor of the plaintiff for a certain sum against the defendant Ford Motor Co. The appeal

is from the judgment on the verdict. *Held:*

1. By the warranty in question Ford Motor Co. warrants every part of the vehicle, under normal use and service, to be free from defects in material and workmanship for 24 months or 24,000 miles, whichever comes first. With regard to the "power train" and the "steering, suspension and wheels," there is a similar warranty for a longer period of 5 years or 50,000 miles, whichever comes first. The warranty's general provisions specify that the particular warranties are conditioned upon a requirement that the owner maintain the vehicle in accordance with a service-maintenance schedule. It is also specified that "All the warranties shall be fulfilled by the selling dealer . . . [except where residence changes or during travels] replacing with a genuine new Ford or Ford authorized reconditioned part, or repairing at his place of business, free of charge including related labor, any such defective part." Certain parts, e.g., tires, filters, wiper blades, hoses and appearance items, and certain normal maintenance services, e.g., engine tune-up, brake and clutch adjustments, are expressly excluded from warranty.

The warranty contemplates that the warrantor shall have an opportunity to remedy defects. Thus the warranty is not instantly breached if the car is found on delivery or at some time thereafter within the warranty period to have a defective part or operational deficiency. The language of the warranty provides that in such event the manufacturer, through its selling dealer or other appointed agency, will replace or repair (except those items and adjustments expressly excluded), and do what is necessary to bring the vehicle to normal at no cost to the purchaser. Assuming the purchaser has maintained his vehicle in the manner specified, it is the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy which would constitute a breach of warranty. Generally, see 77 CJS 1235, Sales, § 340.

Ford contends that the trial court erred in failing to direct a verdict against Gunn at the conclusion of the trial. The evidence was that Gunn had discovered a great many defects in the car shortly after it was delivered. Gunn testified that there was a drill-hole in the roof; that the headlights blinked; that the elec-

tric windows and ignition switch did not operate properly; that the radio-stereo installation was inoperative; that some doors were out of line; that there were numerous water and dust leaks; that oil consumption was too high; and that there was an abnormal amount of vibration in the steering wheel, seats, and the body of the car. Gunn testified that most of the items had been taken care of under the warranty to his complete satisfaction and to such extent there could be no contention of a breach of warranty. But there was evidence that the vibration was not normal and that all efforts by Ford dealers to correct it (including the replacement of all tires and the realignment of the drive shaft) had not been successful. The jury would have' been authorized to find a breach of warranty with regard to the vibration problem. There was evidence as to the value of a car having such a problem. The trial court did not err in denying Ford's motion for a general directed verdict.

2. It is contended that the trial court should have charged, even without request, that the proper measure of damages was the cost of repair and that the charge as given was erroneous.

The trial court charged in effect that the measure of damages was the difference between the purchase price and the value of the vehicle delivered in a defective condition. This charge conforms to the general rule and we find no error. *Studebaker Corp. v. Nail,* 82 Ga. App. 779, 784 (62 SE2d 198). Generally, see Annot. 99 ALR2d 1419, 1440.

In support of its contention that the court erred in failing to charge the jury without request that the measure of damages was the cost of repair of the defective parts of the automobile involved which were covered by the terms of an express warranty, the appellant relies on the case of *Davis-Pickett Chevrolet, Inc. v. Collier,* 106 Ga. App. 660 (127 SE2d 923). The *Davis-Pickett* case is not only distinguishable from the case sub judice, but it rather supports the charge as given in the present case on the measure of damages as the difference between the contract price and the value of the automobile in question. The record in *Davis-Pickett* shows that the plaintiff therein sued for a certain amount as the alleged cost paid by him for repairs, consisting of one-half of a repair bill on repairs made by the

defendant on a 50-50 written guaranty under which the defendant was to pay one-half of the cost of the repair, and also for a repair bill paid by him, the plaintiff, for additional repairs which he had made by a third party. One of the grounds of a motion for new trial by the defendant was that the trial court erred in failing to charge, without request, the law as to the proper measure of damages; and should have charged, even without request, that should the jury find in favor of the plaintiff the measure of damages would be the purchase price of the automobile and its actual value at the time of the sale. It was held in *Davis-Pickett* that the court erred in failing to charge the jury that the measure of damages would be the difference between the purchase price of the automobile and its value at the time of the sale.

It is also to be noted that the brief for appellant takes the position that the trial court "erred in charging the jury the measure of damages for breach of a new car warranty is the difference between the value of the motor vehicle when delivered in a defective condition and the value it would have had had it met the terms of the warranty," because this charge, characterized by appellant as a restricted measure of damages, was erroneous because it *omitted* a charge, without request, that *a* measure of damages was the cost of repair of defective parts of the automobile; relying on the same authority, namely, the *Davis-Pickett* case.

3. One of the enumerations of error urges that the court erred in charging the jury on the limits of its verdict. This evidently has relation to that portion of the charge wherein the court instructed the jury that in the event they should find in favor of the plaintiff and against Ford Motor Co., the form of the verdict would be, "We, the jury, find in favor of the plaintiff against Ford Motor Company in the amount of, and you would write in the amount not to exceed $4,117.52." At the conclusion of the charge and out of the presence of the jury counsel for Ford Motor Co. excepted to that portion of the charge that the jury could bring in a verdict not to exceed $4,117.52, the colloquy between counsel and the court being as follows: "We would like to except to the court charging in effect that the jury could

bring in a verdict not to exceed $4,117.52, because we feel that that amounts to an *opinion of the court,* based on evidence in the case, and particularly Mr. Gunn, which was that he wouldn't give one thousand dollars for the car. And we submit that that amounts to an opinion and weight on his testimony, which is not warranted. The court: What would you suggest the court give them, $5,117.00? Mr. Williams: No, sir. I think the proper charge would be to give a general charge, and that is that the measure of damages in the event of liability is the market value less the cost of repairs, *or* the market value in the defective condition, *or* the cost of repairs under the evidence. And would not give *an opinion.* The court: What about amount, are you saying I shouldn't instruct the jury on any amount? Mr. Williams: Yes, ·Your Honor. The Court: In other words, you request that I instruct the jury that they could bring any amount that they see fit and no limit? Mr. Williams: I just want to make an exception for the record. The Court: Well, I know, but I want to try to do what you want me to do, that's what I'm trying to find out. Well, we'll note his exception." (Emphasis supplied).

The charge of the court as to the limitation of $4,117.52 was doubtless predicated on the "Complaint Count II Amended" filed November 24, 1969, wherein the plaintiff alleged, inter alia, "that the use which plaintiff has received from said vehicle has a market value of $1,000; that plaintiff still holds said automobile and on payment of the purchase price less said loss of use will deliver said automobile to defendants," and prays judgment against defendants in this count in the amount of $4,117.52. This "complaint Count II amended" was thus on the theory of rescission. The court had on that date already stricken Count II of the plaintiff's prior recast complaint as shown by order of December 1, 1969, entered nunc pro tunc as of November 24, 1969, which Count II of plaintiff's recast complaint was predicated on alleged fraud. The plaintiff had already at the outset of the trial on a motion of counsel for Ford Motor Co. to dismiss Count I of the recast complaint elected to proceed on the theory of a complaint for damages for alleged breach of warranty rather than for claimed right of rescission.

The matter of plaintiff's willingness to be charged with or account for $1,000 for his use of the automobile was irrelevant and immaterial in relation to the case as tried under Count I of the recast complaint, relating as it did by plaintiff's election to proceed to trial on the complaint as one for damages for alleged breach of warranty only. The charge did not constitute an expression of opinion. Moreover, in the case sub judice the purchase price of the automobile was $5,117.52 and the amount of the verdict was for the lesser amount of $3,000. The charge as given that the amount of the recovery, if the jury should find in favor of the plaintiff against the Ford Motor Co., could not exceed $4,117.52 was not harmful or prejudicial error. In this connection see *Callaway v. Fischer*, 69 Ga. App. 251 (25 SE2d 131); *Service Wholesale Co. v. Reese*, 91 Ga. App. 366 (85 SE2d 625.)

4. The court charged the jury that "you will note that in the complaint there are certain itemizations of expenses which the plaintiff contends that he incurred as a result of the breach of warranty. I instruct you that you are not to concern yourself with these items. I will instruct you later as to measure of damages."

There was no exception to this portion of the charge by counsel for appellant and the brief of appellant does not argue or cite authority in respect to this question and, accordingly, the enumeration of error that the court erred in admitting the testimony of the plaintiff, Dudley Gunn, concerning consequential damages, will not be considered.

5. Another enumeration of error is that the court erred in failing to strike the testimony of the plaintiff, Dudley Gunn, concerning defects in the automobile. This evidently has relation to the statement by counsel for the appellant that "we would like to now renew our objections to his (plaintiff's) testimony on mechanical defects in the automobile in view of his testimony that he did not know what they were." This statement is entirely too general. It does not specifically set forth or refer to the testimony objected to. Moreover, the question is not argued or authority cited in the brief of appellant in relation thereto. This enumeration of error is, therefore, abandoned and will not be considered.

6. Appellant also contends that the trial court erred in admitting plaintiff's Exhibit No. 4 in evidence. This exhibit is a statement of Midville Motor Co., Inc. of date May, 1969, to Gunn Drug Co., consisting of three items; one of date May 9, 1969, order No. 26915, $33.44; another of date May 12, 1969, order No. 26923, $10.00, and the third of date May 28, 1969, order No. 26952, $3.50, or a total of $46.94, with entry of payment of date June 9, 1969. This Exhibit No. 4 was in evidence, together with the orders therein referred to. Order No. 26915 covers certain parts, consisting of hose, hose clamps, fan belts and fixing of turn lights, and labor charges, and the other two orders relating to labor on electric windows; all of these charges being after the expiration of the twenty-four months warranty period, and relating to maintenance. These items were expressly excluded from the warranty. However, counsel for appellant had on cross examination questioned appellee and developed from him the information shown by the written orders and, therefore, appellant could not complain of the admission of Exhibit 4 which was merely corroborative of appellee's testimony which had been so developed. The admission in evidence of Exhibit 4 was not harmful or prejudicial error. See *Bell v. Bell,* 210 Ga. 295 (79 SE2d 524). It is also noted that $46.94, the total of the three items shown on Exhibit 4, represents only 1.6 percent of $3,000, the amount of the verdict, and falls within the operation of the maxim of de minimis non curat lex. See *Lee v. Lee,* 191 Ga. 728, 735 (13 SE2d 774); Words and Phrases, Vol. 12, de minimis non curat lex.

7. Appellant also contends that the court erred in failing to strike plaintiff's amendment to the complaint setting up a new Count II of the complaint during the trial of the case. This so-called amendment is a pleading entitled "complaint Count II amended," referred to in Division 3 of this opinion. As stated in the enumeration of error in relation thereto, this complaint Count II amended was offered during the trial of the case. Upon the convening of the court after a luncheon recess following the taking of testimony, and in absence of the jury, counsel for appellant made a motion to strike the so-called amendment for the reason that counsel for plaintiff had at the beginning of the

trial elected to proceed for damages only and not for rescission. Following a discussion between the court and counsel, the court, without a written order to that effect, allowed the so-called amendment to be filed merely as a part of the record, but in effect disallowed the amendment, stating, among other things, "I can't tell counsel he can't file an amendment. He has a right to file an amendment, but I am going to restrict the case as to Count 1 and Count 3." However, Count 3 was eliminated from the case by consent of the parties and, when the court later came to charge the jury, the court submitted the case to the jury on Count 1 only, charging the jury: "You will only concern yourself with Count 1. Count 2 and Count 3 are no longer in the case." No exception was entered to the charge in this respect by either of the parties, nor in respect to the failure of the court to submit to the jury the complaint Count II amended. While the court did not enter a written order striking this complaint, it did in effect do so by its charge to the jury, and its elimination of Count II from the case was favorable to the appellant. There is, therefore, no error whatsoever of which complaint is urged insofar as appellant is concerned.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 9, 1970—DECIDED MARCH 16, 1971—
REHEARING DENIED APRIL 1, 1971—CERT. APPLIED FOR.

*Congdon & Williams, W. Barry Williams, Robert C. Daniel, Jr.,* for appellant.

*George W. Fryhofer,* for appellee.